UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America,<br><br>   *v.*<br><br>Steve Velez, et al. | Criminal No. 3:10cr147 (JBA)<br><br>November 30, 2010 |

RULING ON PRE–TRIAL MOTIONS

On June 30, 2010, a grand jury indicted Defendants Steve Velez, Angel Mulero, Gedeon Torres, Ulissis Verde Lopez, Ariel Mendez, William Prieto, Ivan Rodriguez, Anthony Alvarez, Antonio Ayala, Norberto Casanova, Carlos Castillo, Marissa Cruz, Jose Lopez–Solis, Heriberto Perez, Frank Puzzo, Juan Rivas, Philip Samuels, Antwan Yopp, Orlando Zayas, and Juan Soto on several counts of narcotics offenses related to distribution of cocaine and cocaine base. Defendants Ayala, Casanova, and Lopez–Solis thereafter filed various pre–trial motions, and Defendants Cruz, Yopp, Perez, and Rivas moved to adopt Ayala's motions. For the reasons below, each of the pre–trial motions is denied.

I. Background

In Count One of the Indictment, nineteen of the defendants (all except Juan Soto) are charged with "knowingly and intentionally conspir[ing] together and with one another to possess with intent to distribute, and to distribute, controlled substances, namely mixtures and substances containing a detectable amount of cocaine and cocaine base ('crack'), Schedule II controlled substances, contrary to the provisions of [21 U.S.C. § 841(a)(1)]." (Indictment [Doc. # 15] ¶ 1.) The Indictment also charges Defendants Velez (Counts Two, Three, Four, and Six) and Ayala (Count Seven) with possession with intent to distribute and distribution of 50 grams or more of cocaine base (*id.* ¶¶ 7–9, 11–12), and Defendants Mulero

and Verde Lopez with possession with intent to distribute and distribution of 5 kilograms or more of cocaine (Count Five) (*id.* ¶ 10). In Count Eight, the Indictment charges Defendant Juan Soto with use of a telephone to facilitate commission of a drug trafficking felony. (*Id.* ¶ 13.)

The Government represents that on August 6, 2010, it "sent out a discovery package to each of the defendants in this case," providing each Defendant with discovery as follows:

> Each defendant received a copy of his criminal history.
>
> Each defendant was provided a CD that contained all intercepted calls in which that defendant was a participant. In addition, each defendant received a separate CD that contained all calls in the case for all defendants that were designated pertinent to the offenses under investigation and which were intercepted over the telephones of defendants Steve Velez and Angel Mulero. All of these calls provided to the defendants were accompanied by preliminary summaries of the contents of the calls. All other calls that were intercepted were made available for inspection upon scheduling a mutually convenient time with the case agents.
>
> Each defendant also received electronic copies of all of the pen register pleadings/affidavits, wiretap applications, orders and affidavits, wiretap sealing applications and orders, copies of all search warrants and search warrant affidavits and copies of all DEA-6s outlining items seized during the execution of search warrants.
>
> Each defendant also received a CD containing all DEA 6 reports generated during the course of the investigation, including all surveillance reports. Most importantly, the Government prepared a "key documents" file with respect to each defendant, which contained a summary of that particular defendant's intercepted pertinent calls, copies of reports of surveillance as to that particular defendant, copies of reports of the execution of any search warrant as to that defendant, and reports relating to any drug seizures from that defendant. Each defendant received a copy of their "hot documents" file so that they had immediate access to the materials defining their specific role in the conspiracy without having to sort through the entire discovery provided. In essence, each counsel received a copy of the undersigned AUSA's "key documents" file as to their particular client.

> To the extent any defendant was the subject of a controlled drug purchase for which there was audio and/or video surveillance, a copy has been provided to the specific defendant's counsel with the recordings available for inspection by all other counsel. To the extent that a particular defendant was the subject of a drug seizure or seizure of other items of physical evidence, reports pertaining to the seizure and the circumstances surrounding the seizure were provided to all counsel. All counsel will be given copies of the corresponding lab reports from all controlled purchases/seizures during the course of the wiretap, a full set of which will soon be received by government counsel.
>
> The only materials held back were the identities of Confidential Informants/Sources that participated in any controlled purchases or gave historical information during the investigation that formed part of the basis for affidavits in support of wiretap applications. Although the identities have been withheld, the affidavits that contain the substance of the information provided and the DEA 6s detailing the controlled purchases and CI/CS activities have been provided. To the extent that any of these witnesses will testify at trial, their identities and all Giglio material as to those witnesses will be provided three weeks prior to the start of evidence. None of the defense counsel objected to this procedure and this was placed on the record at the status conference held by the Court on August 31, 2010.
>
> Defense counsel were informed that the identities of any Cooperating Witnesses, any Giglio material pertaining to those witnesses and Jencks material as to any witnesses to be called by the Government at trial would be provided three weeks before the start of trial. Defense counsel were invited to discuss the issue with the Government if there was a problem with that time frame. No counsel objected. Indeed, the Government recollects that at the initial status conferences held before this Court, none of the defendants objected to that time frame.
>
> The Government also sent a detailed discovery letter summarizing the discovery material provided and responding to each of the items enumerated in the Standing Order.

(Consol. Resp. [Doc. # 241] at 1–3.)

On July 26, 2010, Defendant Ayala moved for a Bill of Particulars [Doc. # 136], for disclosure of impeaching information [Doc. # 139], to preclude the Government from

3

eliciting any testimony or other documentation about prior misconduct [Doc. # 141], for advance disclosure of Jencks Act material [Doc. # 143], and for notice of intention to use any evidence concerning any other crimes, wrongs, or acts under Federal Rules of Evidence 404(b) and 608(b) [Doc. # 144]. Defendants Cruz, Yopp, Perez, and Rivas subsequently moved to adopt [Doc. ## 193, 195, 207, 219] each of Ayala's pre–trial motions, and the Court granted [Doc. ## 194, 215, 216, 223] their motions to adopt.

On September 9, 2010, Defendant Casanova moved for disclosure of all *Brady* information and material favorable to Casanova [Doc. # 208], for disclosure of all *Giglio* material [Doc. # 209], for early production of Jencks Act material [Doc. # 210], for discovery pursuant to Federal Rule of Criminal Procedure 16 [Doc. # 211], for production of agents' notes pertaining to statements Casanova may have made and any proffer session related to potential witnesses against him [Doc. # 212], for disclosure of demonstrative evidence [Doc. # 213], and for disclosure of co–conspirators' statements [Doc. # 214].

On September 23, 2010, Defendant Lopez–Solis moved for disclosure of *Brady* material [Doc. # 238], for notice of the Government's intention to use evidence of other crimes, wrongs, or acts [Doc. # 239], and for production of any report prepared or utilized by a Government witness in testifying at any pre–trial hearing [Doc. # 240].

II.   Motion for Bill of Particulars

Ayala moves pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure for an order directing the Government to furnish him with a Bill of Particulars with respect to the alleged conspiracy claimed in the Indictment. (Ayala Mot. for Bill of Particulars [Doc. # 136].) He argues that the "broad, unspecific indictment contain[s] no details whatsoever" and does not allege "any overt acts" and that a Bill of Particulars is necessary

4

"to enable him to prepare his defense, to avoid and minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of further prosecution for the same offense." (*Id.* at 3.)

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted). A bill of particulars is not properly utilized as "a general investigative tool for the defense, [or] a device to compel disclosure of the government's evidence prior to trial," *United States v. Baez*, 62 F. Supp. 2d 557, 559 (D. Conn. 1999) (citing *United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir. 1973); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)). Instead, "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he has been accused." *Torres*, 901 F.2d at 234.

A request for a bill of particulars is properly denied where information sought regarding the charged offenses, while not contained in the indictment itself, has been made available by means of additional information provided by the Government. *United States v. Barnes*, 158 F.3d 662, 665–66 (2d Cir. 1998) (district court did not abuse discretion in denying application for bill of particulars where "the Government ha[d] provided the defendants with extensive additional information concerning their alleged involvement in the charged offenses so as to enable them to understand the nature of the charges against them, to prepare a defense, and avoid unfair surprise at trial"); *Torres*, 901 F.2d at 234 (denial

5

of motions for bills of particulars appropriate where "the defendants have been provided with a wealth of evidentiary detail from the discovery to date, including electronic intercepts, search evidence and exhaustive supporting affidavits").

The Indictment charges Ayala with conspiring "[f]rom in or about October, 2009 through in or about June, 2010 . . . in the District of Connecticut," with eighteen named defendants and "others" to possess with intent to distribute and to distribute "mixtures and substances containing a detectable amount of cocaine and cocaine base." (Indictment ¶ 1.) Ayala relies on the Southern District of New York's ruling in *United States v. Ramirez*, 602 F. Supp. 783, 793–94 (S.D.N.Y. 1985), in support of his argument that such a broad conspiracy allegation, without any inclusion of alleged overt acts, does not provide him with enough information to prepare a defense. However, unlike in *Ramirez*, where the Government "declined voluntarily to provide the information" that the defendant sought, 602 F. Supp. at 793, here the Government has produced extensive material in discovery (as described above) that serves to describe and further clarify the details of the alleged conspiracy and each Defendant's involvement. The time–period of the conspiracy and the names of eighteen co–conspirators, in combination with the detail provided by the Government from the wiretaps, surveillance, and related documents, give sufficient notice to Ayala and the joining Defendants of the conspiracy with which they are charged. *See Barnes*, 158 F.3d at 665–66; *Torres*, 901 F.2d at 234; *Baez*, 62 F. Supp. 2d at 559. Ayala's motion [Doc. # 136] for a bill of particulars is accordingly denied.

III.   Motions for *Brady* and *Giglio* Material

Defendants Ayala, Casanova, and Lopez–Solis move the Court, pursuant to the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963), to order the Government to disclose and

provide information and materials favorable to the Defendants that are within the possession, control, or custody of the Government; known to the Government; or through the exercise of due diligence should be known to the Government. (Ayala Mot. for Disclosure of Impeaching Information [Doc. # 139]; Casanova Mot. for Brady Materials [Doc. # 208]; Lopez–Solis Req. for Specific Brady [Doc. # 238].) Casanova also moves for an order directing the Government to provide materials pursuant to *Giglio v. United States*, 40 U.S. 150 (1972). (Casanova Mot. for Giglio Material [Doc. # 209].)

The Government maintains that it has "fully and completely complied" with the Court's Standing Order on Discovery, which requires the Government to disclose both *Brady* and *Giglio* materials. (Consol. Resp. at 7.) In addition, the Government promises that in the event that it becomes aware of any additional *Brady* or *Giglio* material, it will disclose that information promptly. (*Id.*) Given the Government's representations, and because Defendants have not suggested or pointed to any evidence that tends to show that the Government has not complied with its *Brady* and *Giglio* obligations, Ayala's [Doc. # 139], Casanova's [Doc. # 208], and Lopez–Solis' [Doc. # 238] motions for disclosure of *Brady* materials and Casanova's motion for disclosure of *Giglio* materials [Doc. # 209] are denied as moot without prejudice to renew if the Government fails to comply with its representations and ongoing disclosure obligations.

IV.     Motions for Disclosure of Jencks Act and Rule 16 Material

Ayala moves the Court to "order the Government to provide him with Jencks Act material, namely all written statements of all prosecution witnesses and memoranda, notes reports, correspondence and interviews with all such prospective witnesses, not less than ten (10) days before jury selection in this case." (Ayala Mot. for Jencks Act Material

[Doc. # 143].)  Casanova similarly moves the Court to direct the Government "to produce all Jenks [sic] Act materials, including all grand jury testimony of all potential government witnesses, and all reports, memoranda, notes and interview summaries concerning any government witness prior to the trial."  (Casanova Mot. for Jencks Act Material [Doc. # 210].)  Casanova also moves, pursuant to Federal Rule of Criminal Procedure 16, for an order requiring the Government to produce material pertaining to statements made by Casanova, Government witnesses and experts, scientific testing, and any other evidence and circumstances related to the indictment.  (Casanova Mot. for Disc. [Doc. # 211].)  The Government urges the Court to deny these motions on the grounds that the Jencks Act provides for disclosure of witness statements only after a witness has testified on direct examination, and, in any event, the Government has "traditionally provided *Jencks* material at least one week prior to the start of evidence and will do so in this case."  (Consol. Resp. at 5–6 & n.5.)  With respect to Rule 16 material, the Government maintains that it has complied with Rule 16 and the Court's Standing Order on Discovery by producing wiretap evidence as detailed above.  (*Id.* at 6.)

The Jencks Act explicitly provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  The purpose of this Act is "to clarify that the Government need not disclose such statements to the defense until after the Government witness has testified against the defendant on direct examination in open court."  *United States v. Coppa*, 267 F.3d 132, 145 n.10 (2d Cir. 2001).  Defendants' requests for an order compelling materials under the Jencks

8

Act prior to witness testimony are thus premature, and Ayala's [Doc. # 143] and Casanova's [Doc. # 210] motions for disclosure of Jencks Act material are accordingly denied.

With respect to Casanova's motion for Rule 16 material, because the Government represents that it has already produced the wiretap evidence that the Government may introduce in its case–in–chief and will identify cooperating witnesses and produce their interview reports no later than three weeks before evidence commences, (Consol. Resp. at 6 & n.5), Casanova's motion [Doc. # 211] is denied as moot.

V.  Motions for Notice of Intention to Use 404(b) Evidence and for Preclusion of Admission of 404(b) Evidence

Ayala moves the Court "to order the Government to notify him of its intention to use any evidence concerning other crimes, wrongs, or acts in accordance with Federal Rules of Evidence 404(b) and 608(b)." (Ayala Mot. for Notice of Intention to Use Evidence [Doc. # 144].) He also moves *in limine* to preclude the Government "from offering evidence during its case–in–chief of any and all prior bad acts or uncharged crimes of the Defendant." (Ayala Mot. *In Limine* re: Prior Misconduct [Doc. # 141].) Lopez–Solis moves for an order requiring the Government to give notice "at least two weeks prior to trial" of its intention to use evidence of "other crimes, wrongs, or acts." (Lopez–Solis Mot. for Order Requiring Notice [Doc. # 239].)

The Government states that it complied with the Court's Standing Order by providing Ayala and Lopez–Solis with copies of their criminal history and advising them that it might use any criminal conviction in their respective histories as 404(b) evidence, and that it does not intend to introduce any 404(b) or 608(b) evidence in its case–in–chief against Ayala. (Consol. Resp. at 9.) The Government also represents that it is not aware of any

9

404(b) evidence beyond the acts contained in their criminal histories, but at such time that it becomes aware of any other evidence, it will "immediately disclose that evidence to the defendants." (*Id.*) Because the Government has provided "reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial," Fed. R. Evid. 404(b), Ayala's [Doc. # 144] and Lopez–Solis' [Doc. # 239] motions for notice of intention to use 404(b) evidence are denied as moot and Ayala's motion in limine [Doc. # 141] is also denied as moot.

VI.     Motion for Production of Agents' Notes

Defendant Casanova moves for production of agents' notes "pertaining to statements he may have made, and that of any proffer session pertaining to potential witnesses against him." (Casanova Mem. Supp. Mot. for Produc. of Agents' Notes.) The Government opposes the motion on two grounds: (1) that Casanova did not give a post–arrest statement and thus the request for production as it relates to any notes regarding a Casanova statement is moot; and (2) although the Government will preserve agent notes of interviews with other witnesses and parties and will produce any reports of those interviews three weeks prior to trial, Casanova is not entitled to disclosure of the agents' notes.

Under Federal Rule of Criminal Procedure 16, the Government is obligated to disclose to a defendant the substance of any oral statement made by that defendant in response to interrogation; the Government can fulfill this obligation by providing memoranda of relevant interviews between agents and the defendant. *United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir. 1989). However, because Casanova did not give a post–arrest statement, there is nothing to disclose under Rule 16.

With respect to statements made by potential witnesses and co-defendants, the Government accurately points out that the agents' notes related to these statements are not within the purview of the Jencks Act; under which the Government is required only to turn over the witness' statements or reports after the witness has testified on direct examination. *See id.* The Government has promised to produce any reports of witness interviews three weeks prior to the start of evidence and represents that it "will continue to comply with its obligations under *Brady*, *Giglio*, and *Jencks*, and the Court's Standing Order and is mindful that agent notes must be screened for *Brady* and *Giglio* material." (Consol. Resp. at 13–14.) Because the Government's obligations to Casanova under Rule 16 extend only to statements made by him, and because the Government will timely produce witness interview reports, Casanova's motion [Doc. # 212] for production of agents' notes is denied.

VII.  Motion for Pre-trial Disclosure of Demonstrative Evidence

Casanova also moves the Court "to order the Government to disclose pre-trial any and/or all demonstrative evidence, including but not limited to photographs, recordings, charts, drawings, diagrams, and models, that the Government reasonably anticipates will be offered in evidence at trial." (Casanova Mem. Supp. Mot. for Pretrial Disclosure of Demonstrative Evidence at 1.) In response, the Government maintains that it "has not identified evidence falling within this category" but insofar as it will offer "organization charts, maps, diagrams, and the like at trial," it will provide the defense an opportunity to review those exhibits "[a]s soon as such exhibits are prepared." So long as such exhibits are disclosed no later than two weeks before evidence commences, Casanova's motion [Doc. # 213] for pre-trial disclosure of demonstrative evidence will be denied as moot.

VIII.    Motion for Disclosure of Co–Conspirator Statements

Casanova also moves the Court "to order the Government to produce pre–trial all statements, oral or written, of any purported coconspirator that the Government intends [to use] at trial under Fed. R. Evid. 801(d)(2)(E)."  (Casanova Mot. for Disclosure of Co–Conspirator Statements [Doc. # 214].)  In response, the Government maintains that it has already disclosed the statements of the co–conspirators in the form of the recordings of intercepted wire communications and investigative reports previously produced to Casanova.  (Consol. Resp. at 14–15.)  The Government additionally promises that it "will disclose, well in advance of trial, exactly which of the intercepted telephone calls will be offered as full exhibits at trial and transcripts of those calls will be provided in advance of trial."  (*Id.* at 15.)

Although the Government correctly points out that Rule 16 does not encompass statements of co–conspirators, *see United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974), it nonetheless promises to identify which co–conspirator statements it intends to use against Casanova three weeks in advance of the start of evidence. (Consol. Resp. at 16.)  In light of the Government's assurances, Casanova's motion [Doc. # 214] is denied as moot without prejudice to renew if the Government fails to comply with its ongoing disclosure obligations.

IX.    Motion to Produce Statements

Defendant Lopez–Solis moves the Court to order the Government to produce "any report prepared or utilized by a Government witness in testifying before this Court at any pre–trial hearing" as well as any "writing or report" used to refresh that witness's recollection at the hearing.  (Lopez–Solis Req. for Produc. of Witness' Statements [Doc. # 240].)  The

12

Government argues that this request "is premature since it is not known what pre-trial hearings may be required and what documents the Government might rely upon at such time depending on the subject of such a hearing," and that, as a result of the materials that the Government has already produced, Lopez-Solis already has any documents that the Government might use in a pre-trial hearing, with the exception of reports of interviews of cooperating witnesses. (Consol. Resp. at 17–18.) Since no pre-trial hearings have been held or are are currently scheduled, and in light of the Government's representations regarding its previous pre-trial production of cooperating witness reports, Lopez-Solis' motion [Doc. # 240] for production of witnesses' statements is denied as moot.

X.    Conclusion

For the reasons stated above, all pre-trial motions [Doc. ## 136, 139, 141, 143, 144, 208, 209, 210, 211, 213, 214, 238, 239, 240] are DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of November, 2010.